[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13789

_____

ROYAL PALM VILLAGE RESIDENTS, INC.,

on behalf of the homeowner-members in its representative capacity

and on behalf of themselves and all others similarly situated,

GENE ASBURY,

on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated,

JAMES LEMONNIER,

on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated,

BONNIE LOHMEYER, on behalf of themselves, the class of current

and former mobile homeowners in the Park and all others similarly situated,

FRED OSIER,

2                    Opinion of the Court                    21-13789

on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated, et al.,

                                        Plaintiffs-Appellees,

*versus*

MONICA SLIDER,
SHERI WOODWORTH,
BELINDA LAWSON,
SUN COMMUNITIES, INC.,
ROYAL PALM VILLAGE, LLC, et al.,

                                        Defendants-Appellants,


SUN COMMUNITIES OPERATING LIMITED PARTNERSHIP, et al.,

                                        Defendants.


————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00874-CEH-SPF

————————————————

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

JORDAN, Circuit Judge.

Florida law awards attorney's fees to the "prevailing party" in "proceeding[s] to enforce the provisions" of the Florida Mobile Home Act. *See* Fla. Stat. § 723.068. As relevant here, the district court ruled that § 723.068 did not provide for an award of fees as to voluntarily-dismissed amended complaints that—though alleging violations of the FMHA—did not include claims for violations of the FMHA, request relief under the FMHA, or seek to enforce compliance with the FMHA. Following oral argument and a review of the record, we agree with the district court and affirm.

## I

Residents of the Royal Palm Village Mobile Home Park in Haines City, Florida, sued the Park's owners in federal court. Generally speaking, the residents alleged that the owners had engaged in fraud by, among other things, illegally passing on costs to the residents, embellishing lot descriptions to justify increased rents, and falsely promising to upgrade roads and other common areas.

The residents filed a succession of complaints. The initial complaint comprised a combination of common-law, state, and federal statutory claims: four under the federal RICO statute, 18 U.S.C. § 1961 *et seq.*; one under the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; one under the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; one under the Florida Mobile Homes Act, Fla. Stat. §§ 723.001 *et seq.*; and

one for unjust enrichment.  Acting *sua sponte*, the district court dismissed the residents' initial complaint as a shotgun pleading.

The residents filed an amended complaint alleging violations of a slightly different collection of state and federal statutes: four counts under both the federal and Florida RICO statutes—as well as one under the ADA.  The owners moved to dismiss.  The district court dismissed the amended complaint for essentially the same reasons that it had dismissed the initial complaint.

In response, the residents filed a more streamlined second amended complaint, which alleged only five federal statutory violations—four federal RICO claims and one federal ADA claim.  As in the previous complaints, the predicate acts underlying the residents' RICO claims were mail and wire fraud, and the theory underlying those violations was that the owners had used mail and wire communications to perpetrate violations of the FMHA.  The alleged FMHA violations thus provided the factual bases for the residents' RICO claims, but the second amended complaint (like its immediate predecessor) didn't request relief under the FMHA itself.  Nor did it seek to enforce any provisions of the FMHA.  Instead, the second amended complaint requested treble damages for the alleged RICO violations and declaratory and injunctive relief for the alleged ADA violations.

The owners again moved to dismiss.  Although the residents initially opposed the owners' motion, they eventually reversed course and filed a notice of voluntary dismissal without prejudice.  Because the owners hadn't yet answered, the residents' voluntary

dismissal was self-executing. *See* Fed. R. Civ. P. 41(a)(1)(A)(i); 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2363 (4th ed. & Apr. 2022 update).

Claiming victory, the owners sought attorneys' fees under § 723.068, which entitles the "prevailing party" to such fees in "proceeding[s] to enforce provisions" of the FMHA. The district court agreed in part. It permitted the owners to recover the fees that they had incurred prior to the dismissal of the initial complaint. Because only the initial complaint asserted an FMHA claim, the district court explained, only that complaint aimed "to enforce" the provisions of the FMHA. And the owners were the "prevailing part[ies]" as to that FMHA claim, the district court held, because "a defendant can be considered a prevailing party on an abandoned claim."

The owners now appeal the district court's rejection of their fee requests pertaining to the first and second amended complaints. Those complaints, the owners argue, were also "to enforce" the FMHA because the residents predicated the RICO claims in those complaints on violations of the FMHA. And, the owners say, they became the "prevailing part[ies]" with respect to those claims when the residents voluntarily dismissed them.

## II

A district court's denial of attorneys' fees pursuant to a fee-shifting statute is usually reviewed for abuse of discretion. *See, e.g., Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353

F.3d 901, 904 (11th Cir. 2003). But here entitlement to fees depends on the interpretation of § 723.068 of the FMHA. Our review is therefore plenary. *See, e.g., Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007).

## A

We affirm the denial of attorneys' fees to the owners on the residents' amended complaints for the reason articulated by the district court. As we explain, the amended complaints were not "proceeding[s] to enforce provisions" of the FMHA under § 723.068.

The common-law rule in Florida, as elsewhere, is that "each party pay[s] its own [attorneys'] fees." *Willis Shaw Express, Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278 (Fla. 2003). As a fee-shifting statute in derogation of the common law, § 723.068 is "strictly construed." *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007).

What does it mean to "strictly construe" a statute in Florida? One explanation is that statutes in derogation of the common law "will not be interpreted to displace the common law further than is clearly necessary." *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 364 (Fla. 1977). So any doubts about § 723.068 cut against an award of fees.

Fees are awarded to a prevailing party under § 723.068 in "proceeding[s] to enforce provisions" of the FMHA. Where the statute applies, fees are mandatory. *See, e.g., Mihevic Mgmt., Inc. v. Gardens Homeowners Ass'n, Inc.*, 964 So. 2d 226, 227 (Fla. 2d

DCA 2007); *Vidibor v. Adams*, 509 So. 2d 973, 974 (Fla. 5th DCA 1987).

The key statutory phrase in § 723.068 is "to enforce." As directed by the Florida Supreme Court, *see Advisory Opinion to Governor re Implementation of Amendment 4,* 288 So. 3d 1070, 1078 (Fla. 2020), we look to dictionaries at the time of enactment to determine the phrase's meaning. When § 723.068 became law in 1984, the word "enforce" meant "[t]o compel observance of or obedience to: *enforce a regulation*" or "[t]o compel." The American Heritage Dictionary Second College Edition 454 (1985). *See also* Black's Law Dictionary 474 (5th ed. 1979) ("To put into execution; to cause to make effective, as to enforce a particular law . . . .").

Here the alleged FMHA violations set out in the residents' amended complaints were not independent legal claims, but rather components of other claims (e.g., the RICO claims). The amended complaints did not seek any relief under the FMHA. Nor did they request compliance with the FMHA. Those complaints, therefore, were not "proceeding[s] to enforce provisions" of the FMHA. *See* Bryan A. Garner, A Dictionary of Modern Legal Usage 315 (2d ed. 1995) (explaining, in the context of a contractual dispute, that the term "enforcing" is "not apt unless one is seeking specific performance"). *Cf. Nelson's Inc. v. Halifax Const. Co.*, 305 So. 2d 840, 841 (Fla. 3d DCA 1974) (reversing award of attorney's fees under Fla. Stat. § 713.29, which provides fees to failing parties in actions

"to enforce a lien," because the plaintiff only sued for breach of contract and did not seek to enforce or impress a lien).

The Fifth District's decision in *T & W Dev., Inc. v. Salmonsen*, 31 So. 3d 298 (Fla. 5th DCA 2010)—which the district court relied on—supports this conclusion. In that case, a developer of a mobile home subdivision brought an action against a homeowners' association and individual residents for injunctive and declaratory relief arising out of the association's amendment of the deed of restrictions. The defendants prevailed on the developer's claim with respect to the amendment of the deed, and the trial court awarded them fees under § 723.068. On the developer's appeal, the defendants argued that the award of fees was appropriate because the developer had asserted that the amendment of the deed violated a provision of the FMHA. But the Fifth District rejected the notion that "simply invoking" the FMHA is "sufficient to confer entitlement to . . . fees," and explained that it had to "look at the true nature of the relief requested and argued" by the developer. *See id.* at 301. Although the developer had claimed that the amendment of the deed was invalid on a number of grounds, including non-compliance with the FMHA, "the ultimate relief requested was invalidation of the amendment," and such relief "d[id] not raise violations of, or otherwise implicate [the FMHA]." *Id.* at 301-302. Consequently, the developer's claim challenging the amendment of the deed "did not seek to enforce any provision of [the FMHA]

and [the defendants] were not entitled to attorney's fees." *Id.* at 302.[1]

As in *T & W Developers*, the alleged violations of the FMHA—cited by the residents in support of their other legal claims—did not make the amended complaints "proceeding[s] to enforce provisions" of the FMHA. The district court correctly denied fees to the owners as to those complaints under § 723.068.

## B

In his well-written concurrence, Judge Newsom opts to decide the case on the ground that under Florida law a plaintiff's voluntary dismissal without prejudice does not make the defendant a prevailing party. Although he may be right on this point—we express no view on the matter—it seems to us that the better path is to affirm on the ground the district court provided: that the residents' amended complaints did not seek "to enforce" provisions of the FMHA.

First, we are a federal court sitting in diversity. Presented with two possible ways of resolving this case, "we rely upon the narrow ground in order to decide as little Florida law as is necessary to the result." *Fahs v. Martin*, 224 F.2d 387, 398 (5th Cir. 1955).

---

[1] *See generally* 36 Fla. Jur. 2d, Mobile Homes and Recreational Vehicles § 74 (Nov. 2022 Update) (using *T & W Developers* as an illustration of how § 723.068 operates).

Our decision today is based on, and limited to, the FMHA's "to enforce" language in § 723.068. In contrast, a holding that a voluntary dismissal without prejudice does not lead to prevailing party status theoretically applies to many fee-shifting statutes and contracts in Florida. *Cf. United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Second, our holding is consistent with the text of § 723.068 and with the one Florida appellate decision to have addressed the FMHA's "to enforce" language. *See T & W Dev.*, 31 So. 3d at 301-02. "[A]bsent a decision by the highest state court or persuasive indication that it would decide the issue differently," we follow the "decisions of intermediate appellate courts in applying state law." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000). This rule applies even where, as here, there is only one intermediate appellate decision. *See, e.g., West v. Am. Telephone & Telegraph Co.*, 311 U.S. 223, 231, 234-38 (1940); *Six Cos. of California v. Joint Hwy. Dist. No. 13*, 311 U.S. 180, 188 (1940); *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248 n. 14 (11th Cir. 1988).

Third, Judge Newsom's resolution seems to cut against the holdings of all five Florida intermediate appellate courts. As best we can tell, all five have held (at one point or another) that a defendant is a prevailing party for purposes of a fee-shifting statute or contract in Florida when the plaintiff voluntary dismisses his claim

21-13789                Opinion of the Court                11

without prejudice. *See, e.g., State ex rel. Marsh v. Doran*, 958 F.2d 1082, 1082 (Fla. 1st DCA 2007); *Ajax Paving Ind., Inc. v. Hardaway Co.*, 824 So. 2d 1026, 1029 (Fla. 2d DCA 2002); *Yampol v. Schindler Elevator Corp.*, 186 So. 3d 616, 616 (Fla. 3d DCA 2016); *Alhambra Homeowners Ass., Inc.*, 943 So. 2d 316, 318-19 (Fla. 4th DCA 2006); *Black Diamond Properties, Inc. v. Haines*, 36 So. 3d 819, 820-21 (Fla. 5th DCA 2010).[2]

There are admittedly some inconsistent/contrary decisions, such as *Torruella v. Nationstar Mortgage, LLC*, 308 So. 3d 674, 676-77 (Fla. 5th DCA 2020) (holding that a "dismissal for lack of personal jurisdiction does not confer 'prevailing party' status on the party over whom the trial court lacks jurisdiction because the trial court does not rule on any issue central to the merits of the dispute, and the legal relationship between the parties had not been materially changed"). Be that as it may, a holding that a voluntary dismissal without prejudice does not lead to prevailing party status is a broad pronouncement which conflicts with a number of Florida cases. In our view, it is better to avoid creating such dissonance between federal and state courts on an important issue of Florida law.

---

[2] Florida recently created a sixth intermediate appellate court, but it only became effective on January 1, 2023, and has not issued any opinions so far. *See* Fla. Stat. § 35.044.

12                    Opinion of the Court                21-13789

### III

The district court's order denying fees to the owners is affirmed.

**AFFIRMED.**

NEWSOM, Circuit Judge, concurring in the judgment:

I agree with the Court that the owners of Royal Palm Village Mobile Home Park are not entitled to an award of attorneys' fees in connection with their defense of a lawsuit brought by the park's residents. Because I would reach that result by a different route, however, I must concur only in the Court's judgment. I write separately to describe my misgivings about the rationale underlying the majority opinion and to explain my own reasoning.

All here agree that this case turns on the meaning of Fla. Stat. § 723.068. In pertinent part, that statute says that "in any proceeding between private parties to enforce the provisions of [the Florida Mobile Homes Act], the prevailing party is entitled to a reasonable attorney's fee." As relevant here, § 723.068 embodies two necessary conditions to a fee award. First, the "proceeding" with respect to which fees are sought must have been one "to enforce the provisions" of the FMHA. And second, the fee-seeker must have been the "prevailing party" in that proceeding.

The majority affirms the district court's denial of the owners' fee request based on their failure to satisfy the first of § 723.068's two conditions. Specifically, the majority holds that the residents' suit was not a "proceeding . . . to enforce" the FMHA. That may well be right—although not, in my view, for the reasons the majority seems to think. In particular, I'll confess some doubt (which I'll try to explain) about the majority's reading of the lone state-court decision on which it predicates its understanding of FMHA "enforce[ment]." In any event, if it were up to me, I'd

decide the case on what I think is a firmer ground—namely, that even if the residents' underlying suit were a "proceeding . . . to enforce" the FMHA, the owners didn't become "prevailing part[ies]" when the residents voluntarily dismissed their action without prejudice.

## I

First, let me briefly explain my skepticism of the majority's rationale for concluding—though not necessarily of its ultimate conclusion—that the residents' suit wasn't a "proceeding . . . to enforce" the FMHA. Although the majority acknowledges that the residents' amended complaints alleged FMHA violations as "components" of its RICO claims, it concludes that because those complaints didn't "seek any relief under the FMHA" or "request compliance with the FMHA," they didn't initiate suits to enforce the FMHA. Maj. Op. at 7–8. The majority asserts that "[t]he Fifth District's decision in *T&W Dev., Inc. v. Salmonsen*, 31 So. 3d 298 (Fla. 5th DCA 2010) . . . supports [its] conclusion." Maj. Op. at 8. I'm not so sure.

I agree with much of what the majority says about *T&W*. I agree, for instance, that "[i]n that case, a developer of a mobile home subdivision"—called Hollywood Estates—"brought an action against a homeowners' association and individual residents for injunctive and declaratory relief arising out of the association's amendment of the deed of restrictions" that established the developer's and residents' respective rights and responsibilities. *Id*. And I agree that the Fifth District Court of Appeal there "rejected the

notion that 'simply invoking' the FMHA is 'sufficient to confer entitlement to . . . fees'" under § 723.068 and explained, instead, that a reviewing court "had to 'look at the true nature of the relief requested and argued' by" the plaintiff in the underlying suit. *Id.* (quoting *T&W Dev.*, 31 So. 3d at 301).

Importantly, though, as the majority acknowledges, the developer there "had claimed that the amendment of the deed was invalid on a number of grounds"—only one of which was that it violated the FMHA. *Id.* In particular, the *T&W* court emphasized that while the developer had pleaded "a number of general allegations supporting invalidation, some invoking" the FMHA, "the specific allegations of the count, when coupled with the argument proffered at the summary judgment hearing, indicate[d] that the ultimate relief requested was invalidation of the amendment because it destroyed Hollywood Estates' general plan of development and disregarded the intent of the deed of restrictions"—*not* because it violated the FMHA. 31 So. 3d at 301. "Th[o]se allegations," the court said, "d[id] not raise violations of, or otherwise implicate" the FMHA. *Id.* at 302. "Consequently," the court held, the developer's claim "did not seek to enforce any provision of" the FMHA, and the residents, who had obtained summary judgment on the developer's claim, were therefore "not entitled to attorney's fees." *Id.*

The circumstances here, it seems to me, are pretty different. Whereas the developer in *T&W*—the would-be "enforce[r]"—could have prevailed in its suit with or without an FMHA violation,

the FMHA was integral to the residents' claims here. In particular, the residents' RICO claims—the ones that the fee-seeking owners say "enforce[d]" the FMHA—were predicated on accusations that the owners committed mail and wire fraud, and the mail- and wire-fraud accusations, in turn, were predicated on allegations that the owners used mail and wire communications to perpetrate violations of the FMHA. *See* Doc. 47 at 18–28. So, at least as the residents pleaded and pursued their action, the alleged FMHA violations weren't just "components" of the RICO claims; they were *essential* components of those claims. Absent an FMHA violation, there was no mail or wire fraud, and absent mail or wire fraud, there was no RICO violation—and thus no possibility of winning their lawsuit.

None of that, to be clear, is necessarily to say that the residents' suit here *was* a "proceeding . . . to enforce" the FMHA within the meaning of § 723.068. I tend to think that there are pretty good reasons to think that it wasn't. For one, there's the ordinary meaning of the word "enforce."[1] On balance, I tend to agree with the majority that the residents' RICO-based lawsuit didn't *actually* aim "[t]o compel observance of or obedience to" the FMHA as such. Maj. Op. at 7 (quoting The American Heritage

---

[1] For reasons I'll explain in Part II, the majority is quite right that the Florida Supreme Court's recent decision in *Advisory Op. to Governor Re: Implementation of Amend. 4, The Voting Restoration Amend.*, 288 So. 3d 1070 (Fla. 2020), requires a proper textualist analysis of statutory terms and phrases. *See* Maj. Op. at 7.

21-13789          Newsom, J., Concurring.          5

Dictionary Second College Edition 454 (1985)). In fairness, though, I can see the other side: The owners contend that the residents' action aimed to prevent them from continuing their (alleged) RICO violations, and that an injunction requiring compliance with the FMHA would, for all practical purposes, accomplish that objective.

I think there may be a more fundamental—if somewhat conceptual—reason to conclude that the residents' suit wasn't one "to enforce" the FMHA. Recall, again, the (peculiar) manner in which the residents framed their complaint: As relevant here, they *pleaded* federal RICO claims, which they predicated on alleged violations of the federal mail- and wire-fraud statutes, 18 U.S.C. §§ 1341, 1343[2]—which, in turn, they predicated on alleged violations of the FMHA. So, a question: If the residents' suit was one "to enforce" the FMHA—which exists at the bottom of the residents' three-layer complaint—then doesn't it stand to reason that it *must* also have been one "to enforce" the federal mail- and wire-fraud statutes, which comprise the middle layer? Put slightly differently, given the way the residents structured their lawsuit, wouldn't their "enforce[ment]" of the FMHA here necessarily depend in the first instance—working one's way back up the complaint's several layers—on their "enforce[ment]" of the mail- and wire-fraud statutes? To the extent that logic follows—which I

---

[2] Under RICO, "racketeering activity" includes "any act which is indictable under" any of a number of federal criminal laws, including the mail- and wire-fraud statutes. 18 U.S.C. § 1961(1)(B).

think, at least, that it does—it pretty severely undermines the owners' "enforce[ment]"-related argument. The reason? The mail- and wire-fraud laws are federal criminal statutes, and federal criminal statutes are "enforce[d]" by the federal government—in particular, by the executive branch of federal government. They are *not*—indeed, as I've taken pains to emphasize elsewhere, they cannot constitutionally be—enforced by private litigants. *Cf. Laufer v. Arpan LLC*, 29 F.4th 1268, 1291–94 (11th Cir. 2022) (Newsom, J., concurring) (explaining that the authority to enforce criminal laws is a non-delegable aspect of the "executive Power" that Article II of the Constitution vests exclusively in the President and his subordinates and that, accordingly, cannot be exercised by private parties); *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1133–35 (11th Cir. 2021) (Newsom, J., concurring) (same). So, it seems to me, the owners' contention that the residents' suit was one "to enforce" the FMHA may well founder on the shoals of an invalid implicit premise—namely, that the suit must also be understood as one "to enforce" the federal criminal laws on which the residents' FMHA-based allegations necessarily depend.

I've gone on long enough. The upshot is that while I think—or at least I think I think—that the majority is right that the residents' suit wasn't one "to enforce" the FMHA, I'm pretty sure that the question is more complicated than the majority's brief analysis lets on. Accordingly, if it were up to me, I would resolve the case on what I think is more solid ground: I'd go straight to the key criterion that underlies the application of almost every fee-shifting

21-13789                NEWSOM, J., Concurring.                7

statute and ask whether the owners here were "prevailing part[ies]" within the meaning of § 723.068—and in particular, whether they obtained prevailing-party status when the residents voluntarily dismissed their second amended complaint without prejudice.

It is to that question that I now turn.

## II

To my way of thinking, this case presents a discrete question of Florida law:  For attorneys'-fees purposes, does a defendant become a "prevailing party" when, as here, a plaintiff voluntarily dismisses his own suit without prejudice?  Having reviewed the pertinent precedent—from both the Florida Supreme Court and the intermediate courts of appeal—I conclude that the answer is no.[3]  Before unpacking that conclusion, I first explain my view that Florida law, rather than federal law, governs the prevailing-party issue.

---

[3] For two reasons, I wouldn't certify the question to the Florida Supreme Court.  First, as always, we must exercise "restraint" in certifying to state courts questions that arise in cases that fit squarely within a grant of federal jurisdiction.  *Royal Cap. Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011).  Second, for reasons I'll explain, I'm confident that there are "sufficient sources of state law . . . to allow a principled rather than conjectural conclusion" about how the Florida Supreme Court would answer the narrow question here.  *Id.* (quoting *Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir. 1976)).

### A

At the risk of oversimplifying, state law applies in federal courts only if it is "substantive" rather than "procedural." *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 416 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Unfortunately, distinguishing between substance and procedure in state law is not always straightforward. Fortunately, we've already held that, as a general matter, fee-shifting statutes are substantive. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001). So, at least at the statute level, Florida law governs the owners' claim for fees.

The residents nonetheless insist that federal law, rather than Florida law, governs the more granular issue whether the owners were "prevailing part[ies]." And so, the residents' argument goes, they win because under federal law, a party qualifies for prevailing-party status only if it has "been awarded some relief by the court," *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001), such that the court has placed its "judicial imprimatur" on a change in "the legal relationship of the parties." *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016). And, the residents continue, "a dismissal without prejudice places no 'judicial imprimatur' on 'the legal relationship of the parties.'" *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1303 (11th Cir. 2019) (quoting *CRST Van Expedited*, 578 U.S. at 422). So, they conclude, parties like the owners—beneficiaries of a voluntary dismissal without prejudice—can't claim prevailing-party status under the federal definition.

21-13789                NEWSOM, J., Concurring.                9

The residents urge us to employ the federal prevailing-party definition for two reasons. Neither is persuasive. The residents first contend that we should apply the federal definition because it (unlike the FMHA's fee-shifting statute more generally) speaks to procedure. It's true, of course, that "[i]f a federal statute or rule of procedure is on point, [we] apply federal rather than state law." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1210 (11th Cir. 2022). But the residents point to no "statute or rule" that generally defines the term "prevailing party" for federal purposes or otherwise conflicts with the FMHA. Nor is it true, as the residents assert, that the federal definition is properly characterized as a federal-common-law procedural rule. For one thing, the definition has arisen out of federal courts' interpretations of federal statutes, which (at the risk of oversimplifying yet again) is different from judge-directed common lawmaking. *See, e.g., Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 n.34 (1981) (distinguishing between "interpret[ing] and apply[ing] statutory law" and "creat[ing] common law"). And for another, any federal-common-law rule would apply only in those "rare instances concerning rights and obligation[s] of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases"—none of which exists here. *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 n.4 (11th Cir. 2000) (internal quotation omitted).

Second, and separately, the residents assert that the federal definition should apply because the owners' state-law fee-shifting claim implicates the federal courts' supplemental jurisdiction, rather than their diversity jurisdiction. It's true that federal-court jurisdiction over the owners' fee-shifting claim is supplemental because it "form[s] part of the same case or controversy" as the federal statutory claims (RICO, ADA, etc.) over which original jurisdiction exists. 28 U.S.C. § 1367(a). Even so, it is "well established" in this circuit that "the *Erie* doctrine also applies to pendent state claims [*i.e.*, supplemental claims] litigated in federal courts." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (quoting *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987); *cf. also Felder v. Casey*, 487 U.S. 131, 151 (1988) ("[W]hen a federal court exercises diversity or pendent [*i.e.*, supplemental] jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court.'" (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945))).

Long story short: I would hold, in accordance with the general rule, *see McMahon*, 256 F.3d at 1132, that state law governs the interpretation of the phrase "prevailing party" in the FMHA. I turn, then, to a careful analysis of the Florida courts' decisional law bearing on that question.

## B

This Court has outlined a three-step process for making an "*Erie* guess" about the content and meaning of state law. At Step

21-13789          NEWSOM, J., Concurring.          11

1, of course, we ask whether the state supreme court has issued an on-point decision. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). If it has, our job is done. But if the state supreme court hasn't squarely decided the issue before us, we must attempt to "predict how the highest court would decide this case." *Id.* To that end, we consider—at Step 2—decisions of the state's intermediate appellate courts. *Id.* We follow their decisions unless—at Step 3— we find "some persuasive indication that the state's highest court would decide the issue otherwise." *King v. King*, 46 F.4th 1259, 1263 (11th Cir. 2022); *see also Winn-Dixie Stores, Inc. v. Dolgen-corp, LLC*, 746 F.3d 1008, 1020–26 (11th Cir. 2014) (following this three-step progression).

I won't bury the lede: My research reveals (1) that the Florida Supreme Court hasn't squarely decided whether a plaintiff's voluntary dismissal without prejudice renders the defendant a "prevailing party"; (2) that Florida's intermediate courts of appeal are divided on the issue; and (3) that, while there isn't any smoking-gun evidence, there is good reason to think—rising even to the "persuasive indication[]" level—that the Florida Supreme Court would hold that a voluntary dismissal without prejudice does *not* confer prevailing-party status.[4]

---

[4] To be clear, for reasons explained in text, because Florida's intermediate courts haven't all resolved the prevailing-party issue in the owners' favor, we needn't identify "persuasive indications" that the Florida Supreme Court would go the other way; I'm left, in effect, to predict de novo how the Florida Supreme Court would decide the issue. Even so, I think—again, for reasons

12                  NEWSOM, J., Concurring.                  21-13789

1

Because the Florida Supreme Court hasn't decided (at Step 1) whether or not a plaintiff's voluntary dismissal without prejudice confers prevailing-party status on a defendant, I would proceed (at Step 2) to consider the decisions of Florida's intermediate appellate courts. Although not perfectly free from doubt, the majority rule among those courts seems to be that the beneficiary of a voluntary dismissal without prejudice *is* a prevailing party. A number of intermediate-court decisions—and, for that matter, even one of our own unpublished opinions—suggest as much. *See Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014) (cataloguing cases).

The Fourth District Court of Appeal's decision in *Alhambra Homeowners Ass'n, Inc. v. Asad*, 943 So. 2d 316, 318–19 (Fla. 4th Dist. Ct. App. 2006), best illustrates the majority rule. There, the plaintiffs voluntarily dismissed their first lawsuit only to later refile "the same suit." *Id.* at 319. Even so, the court held that the initial dismissal, however short-lived, was enough to make the defendants "the prevailing parties in the first suit." *Id.* In light of *Alhambra*, some Florida courts have been willing to award prevailing-party fees to a defendant following a voluntary dismissal without prejudice "even if the plaintiff refiles the case and prevails." *Mihalyi*

I'll explain—that there *are* "persuasive indications" that the Florida Supreme Court would hold that beneficiary of a voluntary dismissal without prejudice is not a "prevailing party."

21-13789          NEWSOM, J., Concurring.          13

*v. LaSalle Bank, N.A*, 162 So. 3d 113, 115 (Fla. 4th Dist. Ct. App. 2014); *see also Marsh v. Doran*, 958 So. 2d 1082, 1082 (Fla. 1st Dist. Ct. App. 2007) ("The refiling of the same suit after the voluntary dismissal does not alter the appellees' right to recover prevailing party attorney's fees incurred in defense of the first suit."); *cf. also McKelvey v. Kismet, Inc.*, 430 So. 2d 919, 922 (Fla. 3d Dist. Ct. App. 1983) ("[T]he term 'prevailing party' is applicable to a defendant against whom a voluntary dismissal is taken."); *Dolphin Towers Condo. Ass'n, Inc. v. Del Bene*, 388 So. 2d 1268, 1269 (Fla. 2d Dist. Ct. App. 1980) ("[T]he term 'prevailing party' . . . should . . . be construed to include a defendant against whom a voluntary dismissal is taken.").

The Florida appellate courts, though, aren't unanimous in their treatment of dispositions that, like voluntary dismissals, don't "materially change[]" the parties' legal relationship. The Fifth District Court of Appeal seems to have embraced the federal approach, which (as already explained) denies prevailing-party status to beneficiaries of voluntary dismissals without prejudice. *See Torruella v. Nationstar Mortg., LLC*, 308 So. 3d 674, 676 (Fla. 5th Dist. Ct. App. 2020) ("This [prevailing-party] standard, utilized by federal and Florida courts, requires a determination of whether a court-ordered material alteration of the legal relationship between the parties has occurred."). Indeed, the Fifth District has denied prevailing-party status even to the beneficiary of an *involuntary* dismissal without prejudice on the ground that the dismissal neither (1) rested on "a determination of any significant issue in the case"

nor (2) "br[ought] the litigation to an end" because it "afforded [the plaintiff] an opportunity to correct" his complaint. *Shaw v. Schlusemeyer*, 683 So. 2d 1187, 1188 (Fla. 5th Dist. Ct. App. 1996).[5]

---

[5] And in fact, Florida law is even messier than my description of the inter-district split indicates. Even the courts that confer prevailing-party status on some beneficiaries of voluntary dismissals without prejudice don't grant that status in every instance. Sometimes, they "look behind a voluntary dismissal at the facts of the litigation 'to determine whether a party is a substantially prevailing party.'" *Georges v. Avanti Condo. Ass'n*, 324 So. 3d 991, 992 (Fla. 1st Dist. Ct. App. 2021) (quoting *Tubbs v. Mechanik Nuccio Hearne & Wester, P.A.*, 125 So. 3d 1034, 1041 (Fla. 2d Dist. Ct. App. 2013)); *accord Walter D. Padow, M.D., P.A. v. Knollwood Club Ass'n*, 839 So. 2d 744, 745 (Fla. 4th Dist. Ct. App. 2003); *Yampol v. Schindler Elevator Corp.*, 186 So. 3d 616, 617 (Fla. 3d Dist. Ct. App. 2016) ("There are undoubtedly cases in which the general rule [to confer prevailing-party status after voluntary dismissals without prejudice] may be inapplicable to a particular set of circumstances . . . ."). Using that power, they sometimes deny prevailing-party status to defendants who didn't "really" prevail—as when the dismissal follows a settlement in which the defendants paid up. *See Padow*, 839 So. 2d at 745 (affirming the denial of prevailing-party fees to a party whose opponent, through an informal settlement, had "got most of what it sought" and "achieved all of the legitimate goals of its suit"); *Isola Bella Homeowners Ass'n v. Clement*, 328 So. 3d 1132, 1135 (Fla. 4th Dist. Ct. App. 2021) (awarding a *plaintiff* prevailing-party fees after *it* voluntarily dismissed its own complaint because "under the settlement agreement, [the plaintiff] uncompromisingly obtained the only relief sought on the only issue raised in this litigation"); *see also Tubbs*, 125 So. 3d at 1042 (denying prevailing-party status to a mortgagor when the mortgagee voluntarily dismissed foreclosure claims because a superior mortgagee had successfully foreclosed on the property). And at least one court has recognized that a defendant is less likely to deserve prevailing-party status when the dismissal is without prejudice. *See Yampol*, 186 So. 3d at 617.

21-13789　　　　　　NEWSOM, J., Concurring.　　　　　　15

The split among Florida's intermediate appellate courts makes it impossible to identify (at Step 2) decisions to which we should defer. The Florida Supreme Court has indicated that intermediate-court decisions don't "represent the law of Florida" in the event of an "interdistrict conflict." *State v. Barnum*, 921 So. 2d 513, 523 (Fla. 2005), *as revised on denial of reh'g* (2006) ("[I]n the absence of interdistrict conflict, decisions of the district courts represent the law of the state."). And that makes sense, of course. It would be hard to say that "Florida law" embodies any particular rule—about prevailing-party status or otherwise—if the applicable rule depends on the particular locale in which a case arises.

All is not lost, though. Whatever the state of intermediate-court precedent—and, as explained, I think it's less well-settled than the owners contend—I believe that the Florida Supreme Court has given us, at Step 3, "persuasive indication[s]," *King*, 46 F.4th at 1263, of how it would resolve the question whether the beneficiary of a voluntary dismissal without prejudice qualifies for prevailing-party status. I turn next to those indications.

**2**

I find in its precedent three indications that the Florida Supreme Court would define the term "prevailing party" in Fla. Stat. § 723.068 *not* to include beneficiaries of voluntary dismissals without prejudice. Those indications—which I'll consider in turn—are (1) the Florida Supreme Court's insistence that fee-shifting statutes be strictly construed, (2) its general observations about the meaning of the term "prevailing party," and (3) its recent insistence on

interpreting statutory terms and phrases in accordance with their ordinary meaning.

### a

Fee-shifting statutes contradict the traditional "American rule" that each party pays its own attorneys' fees. Because these statutes are "in derogation of the common law," *Roberts v. Carter*, 350 So. 2d 78, 78–79 (Fla. 1977), Florida courts—like those in many other jurisdictions—long ago adopted what has become the "well-established rule" that "statutes awarding attorney's fees must be strictly construed," *Dade Cnty. v. Pena*, 664 So. 2d 959, 960 (Fla. 1995) (quoting *Gershuny v. Martin McFall Messenger Anesthesia Pro. Ass'n*, 539 So. 2d 1131, 1132 (Fla. 1989)); *see generally Ocean Acc. & Guarantee Corp. v. Cauthen*, 12 So. 2d 294, 295 (Fla. 1943) (stating that a provision in "derogation of the common law" should "be construed strictly"); *cf. also Florida Birth-Related Neurological Inj. Comp. Ass'n v. Florida Div. of Admin. Hearings*, 686 So. 2d 1349, 1355 (Fla. 1997) ("[S]tatutes designed to supersede or modify rights provided by common law must be strictly construed and will not displace common law remedies unless such an intent is expressly declared." (quoting *Adventist Health Sys./Sunbelt v. Hegwood*, 569 So. 2d 1295, 1296–97 (Fla. 5th Dist. Ct. App. 1990))).

In practice, this strict-construction rule requires Florida courts to apply the American-rule norm unless a statute clearly says otherwise. Accordingly, I start from the premise that if a statute like § 723.068 doesn't clearly make a litigant a prevailing party, then that litigant doesn't qualify.

## b

Although it hasn't squarely decided the issue, the Florida Supreme Court has signaled that the term "prevailing party" should be defined in a way that, in operation, would exclude beneficiaries of voluntary dismissals without prejudice. In particular, over the years, that court has repeatedly suggested that a party does not prevail unless and until (1) the litigation comes to an end and (2) the parties' relationship is materially altered.

Some 30 years ago, the Florida Supreme Court held (adopting the then-applicable federal standard) that the "prevailing party" is the litigant who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 809–10 (Fla. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1200 & 1200 n.5 (Fla. 2009) (identifying *Hensley* as the source of Florida's definition of "prevailing party"). Under that standard, the "touchstone of the prevailing party inquiry [was] the material alteration of the legal relationship of the parties." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989) (applying *Hensley*). That's a problem for the owners here, because a voluntary dismissal without prejudice *neither* definitively resolves any "significant issue" underlying the lawsuit *nor* "material[ly] alter[s]" the parties' legal relationship. To the contrary, as this Court has observed before, a "voluntary dismissal renders the proceedings a nullity and leaves the parties as if the action had never been brought."

*University of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996)) (internal quotation marks omitted); *accord, e.g.*, 24 Am. Jur. 2d *Dismissal* § 91 (2022) ("The effect of a voluntary dismissal of an action is to render the proceeding a nullity."). Accordingly, under *Moritz*, it would seem to follow that a plaintiff's voluntary dismissal without prejudice doesn't confer prevailing-party status on the defendant.

But there's more. The Florida Supreme Court has addressed the prevailing-party status of beneficiaries of some voluntary dismissals, and what it has said indicates that without-prejudice dismissals don't qualify. Sometimes, that court has clarified, "neither party is a 'prevailing party'" because neither really achieves any meaningful benefit. *Trytek*, 3 So. 3d at 1203. Accordingly, despite the usual rule that "when a plaintiff voluntarily dismisses an action, the defendant is the prevailing party," the court has observed that "[t]here must be some end to the litigation on the merits so that the court can determine whether the party requesting fees has prevailed." *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990). To that end, the court has explained that a plaintiff's voluntary dismissal *with* prejudice qualifies the defendant as the prevailing party precisely *because* the dismissal was "with prejudice, thus signaling an end to the litigation." *Id.* As already explained, a voluntary dismissal *without* prejudice, by contrast, does *not* signal an end to the litigation, but rather specifically contemplates that it may recommence. Thus, according to the Florida

21-13789　　　　　　　NEWSOM, J., Concurring.　　　　　　　19

Supreme Court's reasoning, it's the quintessential case in which "neither party is a prevailing party." *Trytek*, 3 So. 3d at 1203 (internal quotation marks omitted).

There is one final datapoint from the Florida Supreme Court regarding voluntary dismissals. That court clearly seems to recognize that a voluntary dismissal without prejudice lacks the conclusiveness conferred by a with-prejudice dismissal—and that the distinction matters for prevailing-party purposes. In one case, for instance, the court confronted a statute allowing for the recovery of attorneys' fees "after voluntary dismissal." Tellingly, the court interpreted that barebones statute to cover only voluntary dismissals *with* prejudice. Those dismissals—unlike voluntary dismissals without prejudice, the court emphasized—provided a "basis for a judgment of no liability." *MX Invs., Inc. v. Crawford*, 700 So. 2d 640, 642 (Fla. 1997). So to be clear, while the Florida Supreme Court didn't squarely address the question before us, it did recognize the distinction between with- and without-prejudice voluntary dismissals, and in so doing "indicat[ed]," *King*, 46 F.4th at 1263, that only the former confer prevailing-party status.

c

One more "indication" to go—this one more general, but no less significant. As the majority recognizes, the Florida Supreme Court has recently clarified—in the strongest possible terms—that it expects state statutes to be interpreted in accordance with the plain, ordinary meaning of their terms. *See* Maj. Op. at 7. In

particular, in a recent advisory opinion—permitted under state law[6]—the court expressly announced that it strictly "adhere[s] to the supremacy-of-text principle," under which "'[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Advisory Op. to Governor, re Implementation of Amend. 4, The Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) (other internal quotations omitted)). To operationalize that principle, the court said, it "looks to dictionary definitions," *id.* (quoting *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 800 (Fla. 2014)), and interprets "every word . . . in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it," *id.* (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157–58 (1833)). And, the court has shown since, it won't hesitate to sideline non-textualist precedents. *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020).

Given the Florida Supreme Court's recent "turn to textualism"—my term—I think it reasonably clear that it would hold that the term "prevailing parties" in § 723.068 does not include beneficiaries of voluntary dismissals without prejudice. That is so for two reasons.

---

[6] *See* Fla. Const. art. IV, § 1(c); Fla. R. App. P. 9.500.

First, "prevailing party" is a "legal term of art," *Buckhannon*, 532 U.S. at 603, that has appeared in federal statutes since 1867, *id.* at 611 (Scalia J., concurring). A term of art, *Black's* explains, bears "a specific, precise meaning in a given specialty." *Term Of Art*, Black's Law Dictionary (11th ed. 2019). In our particular "specialty"—attorneys'-fees statutes—the term "prevailing party" carried three meanings in 1984, when the Florida Legislature enacted § 723.068. They were:

1. the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention,

2. the one in whose favor the decision or verdict is rendered and judgment entered, and

3. the party ultimately prevailing when the matter is finally set at rest.

*Prevailing Party*, Black's Law Dictionary (5th ed. 1979) (internal citations omitted).

None of those definitions, it seems to me, is properly understood to include the beneficiary of a voluntary dismissal without prejudice. A voluntary dismissal without prejudice (1) does nothing to definitively resolve the "main issue," but rather leaves the parties where it found them, free to recommence their dispute; (2) is unaccompanied by any court "judgment," *see MX Invs.*, 700 So. 2d at 642 (explaining that voluntary dismissals without prejudice

are not a "basis for a judgment of no liability"); and (3) neither sets the matter "at rest" nor provides an "ultimate[]" resolution.

Dictionary definitions aside, federal law in 1984—as today—clearly and consistently defined the term "prevailing party" not to include the beneficiaries of voluntary dismissals without prejudice. Then, as now, federal law held that a "prevailing party" was a litigant who had obtained either an enforceable judgment on the merits, *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980), or, at the very least, a court-approved consent decree, *Maher v. Gagne*, 448 U.S. 122, 129–30 (1980). *See Buckhannon*, 532 U.S. at 603–04 (outlining the federal courts' historical definition of the term and reiterating that "a consent decree may serve as the basis for an award of attorney's fees").

In the light of the ordinary 1984-era meaning of the term "prevailing party" and the well-accepted federal definition, the question is whether there is any reason to think that Florida courts had settled on some idiosyncratic, divergent understanding at the time § 723.068 was enacted. There isn't. To the contrary, their treatment of the term "prevailing party" circa 1984 was in a limbo of sorts, and in any event far from achieving term-of-art status. To be sure, some of Florida's intermediate courts at the time conferred prevailing-party status on beneficiaries of voluntary dismissals without prejudice. *See McKelvey*, 430 So. 2d at 922; *Dolphin Towers*, 388 So. 2d at 1269; *Gordon v. Warren Heating & Air Conditioning, Inc.*, 340 So. 2d 1234, 1235 (Fla. 4th Dist. Ct. App. 1976). But their holdings to that effect were neither entrenched nor

uncontroversial.  In fact, just the year before § 723.068's adoption, the Third District Court of Appeal—without any meaningful explanation and over a vigorous dissent—had seemingly upended a decade-old consensus defining the term more or less as federal courts did.  *See McKelvey*, 430 So. 2d at 922 (apparently reversing these cases); *id.* at 922–26 (Ferguson, J., dissenting).[7]

In short, there is very good reason (grounded in settled linguistic understandings and consistent federal precedent) to think that the Florida Supreme Court would interpret § 723.068 to exclude the beneficiaries of voluntary dismissals without prejudice, and that there is precious little evidence to support a contrary conclusion.

---

[7] *See Steinhardt v. Eastern Shores White House Ass'n*, 413 So. 2d 785, 786 (Fla. 3d Dist. Ct. App. 1982) ("In order that there be a prevailing party and a losing party, there must necessarily be a disposition of the case or controversy as by judgment or order."); *Midway Shopping Mall, Inc. v. Airtech Air Conditioning, Inc.*, 253 So. 2d 900, 902 (Fla. 3d Dist. Ct. App. 1971) (holding that "[t]here was not a favorable determination of such finality as would entitle the owner to" prevailing-party status); *Sharpe v. Ceco Corp.*, 242 So. 2d 464, 465 (Fla. 3d Dist. Ct. App. 1970) ("The prevailing party is regarded as that party who has affirmative judgment rendered in his favor at the conclusion of the entire case."); *see also Executive Ctrs. of Am., Inc. v. Durability Seating & Interiors, Inc.*, 402 So. 2d 24, 26 (Fla. 3d Dist. Ct. App. 1981) ("Holding a party liable for attorney's fees solely because they bring a law suit and then take a voluntary dismissal would have the deleterious effect of discouraging parties from seeking voluntary dismissals and is not what is contemplated by Section 57.105 [a prevailing-party statute].").

⋆  ⋆  ⋆

To reiterate, I would hold for three reasons that Fla. Stat. § 723.068's use of the term "prevailing party" is properly understood (and would be interpreted by the Florida Supreme Court) not to include the beneficiary of a voluntary dismissal without prejudice.  First, the Florida Supreme Court has long embraced the general interpretive principle that "statutes awarding attorney's fees must be strictly construed." *Pena*, 664 So. 2d at 960.  Second, that court has held that, in general, a "prevailing party" is one in whose favor a "significant issue" in litigation has been definitively resolved, *see Moritz*, 604 So. 2d at 809–10, and a voluntary dismissal without prejudice, by its very nature, doesn't accomplish that result.  And finally, that court has recently underscored the importance of interpreting statutory words and phrases in accordance with their plain (and original) meaning, and the best evidence is that at the time of § 723.068's enactment the term "prevailing party" didn't—and thus doesn't—include the beneficiary of a voluntary dismissal without prejudice.

## III

Our duty in a case like this is to make an informed "*Erie* guess" about how the Florida Supreme Court would decide the issues before us.  I'm pretty sure—although not certain—that the majority has ultimately guessed right on the "enforce[ment]" question.  But I'm *more* sure that I have a handle on how the Florida Supreme Court would decide the "prevailing party" issue.  Having combed through the relevant Florida law, I conclude that the

21-13789             NEWSOM, J., Concurring.             25

Florida Supreme Court would hold that the beneficiary of a voluntary dismissal without prejudice is not a "prevailing party" within the meaning of Fla. Stat. § 723.068—and, accordingly, that the owners here are not entitled to fees. I would thus affirm the district court's decision on that basis.