[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14565

_____

ELKIN KING,

Plaintiff-Appellant,

*versus*

FORREST KING, JR.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01427-BJD-MCR

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Elkin King ("Elkin") contends that his former stepfather, Forrest King ("Forrest"), owed him a fiduciary duty to disclose the existence of certain Settlement Funds arising from the wrongful death of Elkin's biological father. As this diversity action[1] turns on the precise parameters of Georgia's fiduciary duty to disclose and we are unable to locate any controlling precedent from a Georgia court, we respectfully certify three questions to the Supreme Court of Georgia.

## I.

On September 6, 1985, Elkin's biological father, Elkin Simpson, Sr., was killed in a plane crash. Elkin, then named Elkin Simpson, Jr., was approximately seven years old. At the time of his death, Elkin Simpson, Sr., was in the process of divorcing Elkin's mother, Peggy,[2] but a final divorce decree had not yet been

---

[1] *See* 28 U.S.C. § 1332.

[2] Peggy, who is currently incarcerated in federal prison, has at various times been known as Peggy Fulford, Peggy Jones, Peggy King, Peggy Williams, Peggy Simpson, Peggy Rivers, and Peggy Barard. *Self-styled "Financial Advisor" Ordered to Prison after Defrauding Professional Athletes Out of Millions*, U.S. DEP'T OF JUSTICE (Nov. 7, 2018), https://www.justice.gov/usao-sdtx/pr/self-styled-financial-advisor-ordered-prison-after-defrauding-professional-athletes-out. For simplicity's sake, we refer to her as "Peggy" throughout this opinion.

entered. *See Simpson v. King*, 383 S.E.2d 120, 121 (Ga. 1989) (further describing Elkin Simpson, Sr.'s marital and relationship status at the time of his death). Accordingly, Peggy filed a wrongful death suit against the airline company as a surviving spouse on behalf of herself and Elkin. *See* O.C.G.A. § 51-4-2 (1991). In 1989, when Elkin was approximately eleven, Peggy and the airline company reached a settlement agreement from which at least $200,000 was set aside for Elkin's benefit ("the Settlement Funds"). Peggy's attorney, Glover McGhee, suggested that the Settlement Funds should be placed in an account in her then-husband Forrest's name. Peggy agreed, and so the Settlement Funds check was made out to both Peggy and Forrest on behalf of Elkin. Forrest then placed the Settlement Funds in a separate account entitled "Elkin's Account with Custodian of Forrest King" at Charles Schwab in Atlanta, Georgia. The parties dispute whether Peggy was also a party to the account. There is no evidence that a formal, written trust governing the use of these Settlement Funds ever existed.

Forrest and Peggy divorced in approximately February 1999, when Elkin was 20 years old. The parties dispute whether Forrest turned over control of the account to Peggy following the divorce, but it is undisputed that Forrest's name was on the account until at least the divorce. Apparently, the last of the Settlement Funds (approximately $50,000) was used by Peggy in around 2005 as a down payment for a condominium she purchased in Louisiana. Elkin testified in a deposition that he first learned about the Settlement Funds in 2017 from his maternal grandfather. Elkin also testified

that he would have taken control of the Settlement Funds had he known about them when he was 18.  Forrest, meanwhile, testified in a deposition that he informed Elkin about the existence of the Settlement Funds when Elkin was around 17 or 18 years old.

On November 30, 2018, Elkin sued Forrest in the Middle District of Florida.  In his amended complaint, Elkin alleged that Forrest converted Elkin's Settlement Funds and that Forrest breached fiduciary duties to Elkin under Georgia law because he (1) "failed to disclose and concealed the fact of the settlement"[3] and (2) "failed and refused to account for [the Settlement Fund] proceeds or to pay the proceeds to [Elkin]."  In his answer, Forrest responded by raising the statute of limitations as an affirmative defense.  Following discovery, Forrest moved for summary judgment on October 14, 2019, on both his statute of limitations defense and on the merits.  In turn, Elkin moved for partial summary judgment on his claims on March 30, 2020.  On August 24, 2020, the District Court granted summary judgment for Forrest on the merits, holding (1) that a jury could find that Forrest and Elkin were in a

---

[3] Forrest argues that Elkin did not adequately plead a breach of the fiduciary duty to disclose in his amended complaint because the statement quoted above was in the factual allegations section of the amended complaint.  However, Elkin's "short and plain statement" describing his failure to disclose claim was expressly incorporated into the breach of fiduciary duty section of his amended complaint.  Fed. R. Civ. P. 8(a)(2).  Forrest thus had "fair notice" of Elkin's failure to disclose claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

confidential relationship under Georgia law and so the statute of limitations could be tolled; (2) that Forrest did not convert the Settlement Funds because he used them only for Elkin's benefit; and (3) that if Forrest did owe Elkin a fiduciary duty under Georgia law, it was only to "ensure the Settlement Funds were used to [Elkin]'s benefit," which Forrest did. Elkin then timely appealed.

## II.

We review grants of summary judgment *de novo*. *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). On summary judgment review, we view all evidence in "the light most favorable to the nonmoving party" and draw "all justifiable inferences in that party's favor." *Id.* at 1317–18 (quotation and quotation marks omitted).

When deciding state law claims, we apply state law to substantive legal issues. *See Ungaro–Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004); 28 U.S.C. § 1652. In determining the meaning of state law, we defer to the state supreme court's interpretation of its own law. *LaFrere v. Quezada*, 582 F.3d 1260, 1263–64 (11th Cir. 2009). If the state supreme court has not addressed the question, we defer to the state's intermediate appellate courts "absent some persuasive indication that the state's highest court would decide the issue otherwise." *People's Gas Sys. v.*

6                    Opinion of the Court                    20-14565

*Posen Constr., Inc.*, 931 F.3d 1337, 1339 (11th Cir. 2019) (quotation omitted).

## III.

The sole issue[4] on which we certify questions to the Supreme Court of Georgia is Elkin's claim that Forrest breached a fiduciary duty by not disclosing the existence of the Settlement

---

[4] Elkin also argues that Forrest breached his fiduciary duties to Elkin by misusing the Settlement Funds. However, Peggy testified under oath that the Settlement Funds were all used for Elkin's benefit and provided a rough chronology and accounting of expenses detailing how she used the Settlement Funds to buy several cars for Elkin, pay Elkin's private elementary and high school tuition, pay Elkin's college tuition, and pay rent for Elkin's apartments. In response, Elkin has provided no evidence or testimony of misuse other than Peggy's 2005 purchase of the condominium. As Elkin has not pointed to "specific facts showing that there is a genuine issue for trial" on whether Forrest (not Peggy) misused the Settlement Funds, this claim cannot survive summary judgment. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (per curiam).

Elkin purports to appeal the summary judgment of his conversion claim as well. However, Elkin never presented any arguments or even citations in his opening brief to show that Forrest converted the Settlement Funds. Instead, Elkin simply tacked the word "conversion" onto his arguments that Forrest breached his fiduciary duties to Elkin. This is insufficient to raise conversion as a separate issue on appeal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). Accordingly, Elkin has forfeited his conversion claim. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

Funds to Elkin when he turned 18.[5]  To support that claim, Elkin argues that (1) he was entitled to control the Settlement Funds when he turned 18 and (2) Forrest owed him a fiduciary duty to disclose the existence of the Settlement Funds when he turned 18 due to their confidential relationship.  Whether these arguments are valid turns on Georgia law.

For the first argument, it appears that Elkin did have a right to control the Settlement Funds when he turned 18.  Under the version of § 51-4-2 applicable during the 1989 settlement,[6]  children

---

[5] A breach of fiduciary duty claim under Georgia law has three elements: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Ray v. Hadaway*, 811 S.E.2d 80, 84 (Ga. Ct. App. 2018) (quotation omitted).  Our certified question primarily concerns the first two elements; we assume that if a jury could find that Forrest breached a fiduciary duty to disclose to Elkin, then a jury could find that Elkin suffered damages from that failure to disclose.

[6] Our analysis assumes that the 1989 version of § 51-4-2(d)(1) governs Elkin's Settlement Funds.  *See Fowler Props., Inc. v. Dowland*, 646 S.E.2d 197, 200 (Ga. 2007) (recognizing that "legislation which affects substantive rights may only operate prospectively").  We note, however, that § 51-4-2(d)(1) has been substantively amended in both 1993 and 2022.  Between 1993 and 2022, § 51-4-1(d)(1) stated:

> Any amount recovered under subsection (a) of this Code section shall be equally divided, share and share alike, between the surviving spouse and the children per capita, and the descendants of children shall take per stirpes, provided that any such recovery to which a minor child is entitled and which equals less than $15,000.00 shall be held by the natural guardian of the child, who shall hold and use such money for the

recovering for the wrongful death of a parent receive an equal share of the recovery "as if it were personal property descending from the decedent to the surviving spouse and to the children." §51-4-2(d)(1) (1991). This is true whether the children recover under a judgment or a settlement. § 51-4-2(c) (1991) (requiring that a surviving spouse releasing the claims of a child to "hold the consideration for such release subject to subsection (d) of this Code section"). So, any right Peggy (and by extension Forrest) had to control Elkin's Settlement Funds could only arise from the right of parents and guardians to control the property of their minor children, which ends once the minor child reaches the age of majority. *See* O.C.G.A. § 19-7-1(a).

For the second argument, Forrest and Elkin may have been in a confidential relationship. The applicable version of O.C.G.A. § 23-2-58[7] states:

---

> benefit of the child and shall be accountable for same; and any such recovery to which a minor child is entitled and which equals $15,000.00 or more shall be held by a guardian of the property of such child.

§ 51-4-2(d)(1) (1994). In 2022, the Georgia legislature amended § 51-4-2(d)(1) to say, "Any amount recovered under subsection (a) of this Code section shall be equally divided, share and share alike, among the surviving spouse and the children per capita, and the descendants of children shall take per stirpes." § 51-4-2(d)(1) (2022). The same bill which amended § 51-4-2(d)(1) in 2022 also amended O.C.G.A. § 29-3-3(c) to govern the settlement of minors' claims. Ga. L. 2022, p. 207, §§ 3, 7.

[7] Section 23-2-58 was amended in 2020 to state

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

§ 23-2-58 (1991). Here, the District Court held, and we agree, that a jury could find that Forrest, then Elkin's stepfather, entered into a confidential relationship with Elkin when he placed Elkin's Settlement Funds into a bank account in his name and thus situated himself so "as to exercise a controlling influence over the will, conduct, and interest of" Elkin. *Id.*; *Savu v. SunTrust Bank*, 668 S.E.2d 276, 282 (Ga. Ct. App. 2008) ("Because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the issue of whether a confidential relationship

---

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary administrator and heir, legatee, devisee, or beneficiary; trustee and beneficiary; and similar fiduciary relationships.

Ga. L. 2020, p. 377, § 2-26.

has been created is ordinarily reserved for the jury." (quoting *Yarbrough v. Kirkland,* 548 S.E.2d 670, 673 (Ga. Ct. App. 2001)).

Two effects would flow from Forrest and Elkin being in a confidential relationship. First, when a confidential relationship exists, the failure to disclose a material fact constitutes fraud for purposes of tolling the statute of limitations. O.C.G.A. § 23-2-53; *Doe v. Saint Joseph's Catholic Church*, 870 S.E.2d 365, 371 (Ga. 2022). Second, a confidential relationship may establish the existence of a fiduciary duty for a breach of fiduciary duty claim. *See, e.g., Cottrell v. Smith*, 788 S.E.2d 772, 786 (Ga. 2016) (analyzing whether a confidential relationship under § 23-2-58 existed to support a breach of fiduciary duty claim); *Douglas v. Bigley*, 628 S.E.2d 199, 204–05 (Ga. Ct. App. 2006) (reversing a summary judgment on a breach of fiduciary duty claim because "[a]t least some evidence supports the conclusion that a confidential relationship arose between" the parties such that "a jury could conclude that [the defendants] controlled her interest to such an extent that a confidential relationship developed"). However, as far as we can tell, no Georgia case addresses whether a breach of the duty to disclose can support a breach of fiduciary duty claim.

The District Court believed that there was a distinction between the duty to disclose for tolling purposes and the duty to disclose for breach of fiduciary duty claims. While the Court held that Forrest and Elkin's potential confidential relationship created a jury question on whether Forrest had a duty to disclose the existence of the Settlement Fund to Elkin for tolling purposes, the Court

granted summary judgment to Forrest because it thought Forrest's only duty under the breach of fiduciary duty claim was to use the funds for Elkin's benefit.  On appeal, Elkin contends that "it is axiomatic that the same fraud and breach of fiduciary duty that tolled the statute of limitations also will establish the basis for a claim for an accounting or from damages resulting from the breach of the fiduciary duty to disclose." Appellant Br. at 39 (citing *Goldston v. Bank of Am. Corp.*, 577 S.E.2d 864, 870 (Ga. Ct. App. 2003)).  In response, Forrest simply distinguishes *Goldston*, the case Elkin primarily relied on, and does not directly address why his duty to disclose under § 23-2-53 for tolling would not also support a breach of fiduciary duty claim.  Appellee Br. at 13–14.

*Goldston*, the case both Elkin and Forrest relied on for their arguments, is distinguishable because *Goldston* concerned a written trust with terms requiring that certain disclosures be made to the minor beneficiaries.  577 S.E.2d at 690–93.  Here, there is no written trust.  Our review of Georgia caselaw (and the paucity of the parties' briefing on this issue) did not reveal any case directly answering the question of whether the duty to disclose under § 23-2-53 for tolling also supports a breach of fiduciary duty claim. Without any Georgia caselaw directly on point to answer this determinative question,[8] we feel it is appropriate to certify this question to the Supreme Court of Georgia.  *See* O.C.G.A. § 15-2-9(a).

---

[8] The Supreme Court of Georgia's recent decision in *Doe* arguably touches on this question.  *Doe* concerned whether a former altar boy could toll the

statute of limitations for a variety of claims against the Catholic Church, including breach of fiduciary duty, for failing to protect him from sexual abuse by Father Edwards, a Catholic priest the Church allegedly knew sexually abused minors. 870 S.E.2d at 369–71. The Supreme Court of Georgia held that Doe adequately pleaded that a confidential relationship existed between him and the Catholic Church when he was an altar boy and so "its suppression of that information [i.e., its knowledge of Father Edwards's prior sexual abuses] therefore constituted actual fraud." *Id.* at 372–73 (citing § 23-2-53). Later in its opinion, the Supreme Court of Georgia also analyzed "the elements of Doe's potential claims against . . . the Church," including the elements of a breach of fiduciary duty claim. *Id.* at 374. In analyzing the elements of Doe's claims, the Supreme Court of Georgia stated:

> Finally, Doe's *breach-of-fiduciary-duty*, fraudulent-misrepresentation, and fraudulent-concealment claims *each require a showing that the Church misrepresented or concealed its knowledge of "a material fact"* – here, the Church's knowledge that Father Edwards was dangerous to children. *See* OCGA §§ 23-2-53 ("Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."); 51-6-2 (a) ("Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action."); 51-6-2 (b) ("In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort."); *Windjammer Assoc. v. Hodge*, 246 Ga. 85, 86, 269 S.E.2d 1 (1980) (holding that a fraudulent-concealment claim requires proof that the defendant knew of the alleged falsity); *see also Lloyd v. Kramer*, 233 Ga. App. 372, 374 (1)-(2), 503 S.E.2d 632 (1998) (holding that, because the evidence could support a finding that the defendant-podiatrist knowingly made material misrepresentations to the plaintiff-patient, the trial court erred in granting summary judgment to the defendant on the plaintiff's claims for both fraud and

If a confidential relationship can create a duty to disclose sufficient to both toll the statute of limitations and support a breach of fiduciary duty claim, then another question arises: how may an adult fiduciary in a confidential relationship with a minor beneficiary discharge his duty to disclose absent a written agreement? For example, may an adult fiduciary discharge his duty to disclose by disclosing to the minor's parents or guardians without ever disclosing to the minor directly? After all, the minor's parent or guardian will likely control the minor's assets until the minor comes of age, not the minor. If so, Forrest would have discharged any duty he may have had to disclose by informing Peggy about the Settlement Funds account.

---

breach of fiduciary duty); *Garcia v. Unique Realty & Prop. Mgmt. Co., Inc.*, 205 Ga. App. 876, 878 (2), 424 S.E.2d 14 (1992) (holding that "the trial court correctly granted summary judgment to [the] appellees on [a] claim for breach of fiduciary duty" because the "appellees cannot be held liable for failing to disclose what they did not know and could not have foretold").

*Id.* at 375 (emphasis added). By stating that Doe's breach of fiduciary claim required a showing "that the Church misrepresented or concealed its knowledge of a 'material fact,'" the Supreme Court of Georgia implied that the fiduciary duty the Catholic Church breached was its duty to disclose. *See id.* Further, the Supreme Court of Georgia relied in part on § 23-2-53—the same statute used to toll the statute of limitations when a party fails to disclose a material fact in a confidential relationship—as support. But because the discussion of § 23-2-53 was brief and the question in this case was not squarely presented, we seek the Supreme Court of Georgia's guidance on the question.

If, instead, the adult fiduciary must disclose directly to the minor beneficiary at some point, can the adult make that disclosure while the minor is still underage, or must the adult disclose (or re-disclose) once the minor reaches the age of majority?  If so, then Forrest did not discharge his duty to disclose to Elkin when the evidence is viewed in the light most favorable to Elkin.[9]  We have not found a Georgia case directly on point to answer these determinative questions, and so we feel it is appropriate for the Supreme Court of Georgia to have an opportunity to address these questions in the first instance.  *See* § 15-2-9(a); *see also World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 960–61 (11th Cir. 2009) ("[T]he certification procedure [is] a valuable tool for promoting the interests of cooperative federalism [that] helps save time, energy, and resources and produces authoritative answers to novel or unsettled questions of state law." (quotations omitted)).

## IV.

Accordingly, we respectfully certify the following three questions to the Supreme Court of Georgia under § 15-2-9(a) and Georgia Rule of the Supreme Court 46:

---

[9] Moreover, if a jury later determines that Forrest disclosed the existence of the Settlement Funds to Elkin when Elkin was a minor but not when Elkin reached the age of majority, a possibility under this record, then the question of whether an adult fiduciary must disclose or redisclose when the child beneficiary becomes of age would be of great importance.

(1) If a confidential relationship creates a duty to disclose which, if breached, would constitute fraud sufficient to toll the statute of limitations, would that duty to disclose also support a breach of fiduciary duty tort claim under Georgia law?

(2) If so, may an adult fiduciary in a confidential relationship with a minor beneficiary without a written agreement discharge his duty to disclose by disclosing solely to the minor's parents or guardians?

(3) If the adult fiduciary does have an obligation to disclose to the minor beneficiary directly without a written agreement, when must the adult fiduciary disclose or redisclose to the minor beneficiary?

As we have stated before:

> The particular phrasing used in the certified question is not to restrict the Georgia Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Georgia Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*In re Cassell*, 688 F.3d at 1301 (quoting *Martinez v. Rodriquez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968) (alterations omitted)). The entire record on appeal in this case, including copies of the parties' briefs,

16                     Opinion of the Court                 20-14565

is transmitted along with this certification.

**QUESTIONS CERTIFIED.**