**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided:  May 16, 2023

S23Q0105. KING v. KING, JR.

BOGGS, Chief Justice.

Appellant Elkin King sued in federal court Appellee Forrest King, Jr., his former stepfather, alleging that Forrest had concealed, misused, and converted the proceeds of a wrongful death settlement that had been placed in an account for Appellant's benefit when Appellant was a minor with Forrest as the custodian. Appellant further alleged that Forrest's actions had allowed Appellant's mother, Peggy Fulford, to spend the funds remaining in the account after Appellant turned 18 years old. The district court granted summary judgment in favor of Forrest. The United States Court of Appeals for the Eleventh Circuit affirmed summary judgment on the misuse claim and held that Appellant had forfeited his conversion claim. See *King v. King*, 46 F4th 1259, 1263 n.4 (2022). But as to the

concealment claim, the Eleventh Circuit certified three questions to this Court, seeking clarification of the parameters of Georgia's duty to disclose in a confidential relationship. See *King*, 46 F4th at 1267. We respond to the Eleventh Circuit's certified questions as follows. When a confidential relationship is also a fiduciary relationship, the fiduciary's fraudulent breach of the duty to disclose can give rise to a breach-of-fiduciary-duty tort claim if that breach violates a fiduciary's duty to act with the utmost good faith. But whether a fiduciary has failed to act with the utmost good faith in a particular circumstance is a question of fact, not law. Accordingly, we answer the Eleventh Circuit's first question and decline to answer the other two questions.

1. *Background*

On September 6, 1985, when Appellant was almost seven years old, his father died in a plane crash. After Peggy filed a wrongful death suit against the airline on her and Appellant's behalf, she reached a settlement with the airline in 1989 that set aside at least $200,000 for Appellant's benefit ("the Settlement Funds"). The check

2

for the Settlement Funds listed both Peggy and her then-husband Forrest as payees, but on the advice of Peggy's attorney, Forrest placed the Settlement Funds in an account entitled "Elkin's Account with Custodian of Forrest King" at Charles Schwab in Atlanta; the parties dispute whether Peggy was also a party to that account. Despite recommending that Forrest receive the funds as "custodian," Peggy's attorney did not set up a formal, written trust governing the use of the Settlement Funds. Approximately $150,000 of the Settlement Funds were spent for Appellant's benefit before he turned 18.

On September 22, 1996, while living with Forrest and Peggy in Georgia, Appellant turned 18 years old. At that time, Forrest did not turn over the Settlement Funds to Appellant. Instead, the Settlement Funds remained in the account with Forrest as the custodian until February 1999, when Forrest and Peggy divorced. Following the divorce, Forrest took his name off the account, although the parties dispute whether Forrest retained any control over the Settlement Funds. In 2005, Peggy used the remaining

3

$50,000 of the Settlement Funds to purchase a condominium in Louisiana. Peggy was later arrested and is currently incarcerated in federal prison for fraud-related crimes unrelated to this case.

In 2018, Appellant sued Forrest in the United States District Court for the Middle District of Florida, alleging that Forrest converted the Settlement Funds and breached fiduciary duties to Appellant under Georgia law. Appellant testified in a deposition that he would have taken control of the Settlement Funds had he known about them when he turned 18 years old, but he did not learn about the Settlement Funds until his maternal grandfather mentioned them in 2017. Forrest testified in a deposition that he told Appellant about the Settlement Funds when Appellant was 17 or 18 years old. Peggy testified in a deposition that in high school Appellant talked about the Settlement Funds with his friends.

The district court granted summary judgment to Forrest on both the conversion and breach-of-fiduciary-duty claims after finding no evidence that Forrest used the Settlement Funds for any purpose other than for Appellant's benefit. The district court

4

concluded that a reasonable jury could find that naming Forrest as the custodian of the Settlement Funds account had created a confidential or fiduciary relationship between Forrest and Appellant. However, the district court ruled that Forrest's fiduciary duty would only be to use the Settlement Funds for Appellant's benefit, which Forrest had done. On a motion for reconsideration, the district court ruled that Appellant did not sufficiently plead a breach-of-fiduciary-duty claim based on the duty to disclose but, even if he had, that Forrest had not breached his fiduciary duties.

On appeal, the Eleventh Circuit held that Appellant forfeited his conversion claim but had potentially raised a claim for breach of fiduciary duty based on the duty to disclose. The Eleventh Circuit first agreed with the district court that a jury could find that Forrest entered into a confidential relationship with Appellant when Forrest placed the Settlement Funds in an account in his name. The Eleventh Circuit then concluded that, if a confidential relationship existed, the failure to disclose a material fact constituted fraud for the purpose of tolling the statute of limitation for the over two

5

decades that had passed since Forrest was last associated with the Charles Schwab account. The Eleventh Circuit also concluded that a confidential relationship may establish the existence of a fiduciary duty for a breach-of-fiduciary-duty claim. However, because the Eleventh Circuit was unable to find a Georgia case that addressed "whether a breach of the duty to disclose can support a breach of fiduciary duty claim," *King*, 46 F4th at 1265, the Eleventh Circuit certified three questions to this Court. The three questions are:

> (1) If a confidential relationship creates a duty to disclose which, if breached, would constitute fraud sufficient to toll the statute of limitations, would that duty to disclose also support a breach of fiduciary duty tort claim under Georgia law?
>
> (2) If so, may an adult fiduciary in a confidential relationship with a minor beneficiary without a written agreement discharge his duty to disclose by disclosing solely to the minor's parents or guardians?
>
> (3) If the adult fiduciary does have an obligation to disclose to the minor beneficiary directly without a written agreement, when must the adult fiduciary disclose or redisclose to the minor beneficiary?

Id. at 1267.

6

## 2. *Analysis*

Having concluded that a jury could find that Forrest entered into a confidential relationship with Appellant, the Eleventh Circuit makes two explicit assumptions in its first question. First, the question assumes the existence of a confidential relationship creating a duty to disclose. Second, the question assumes a fraudulent breach of the duty to disclose sufficient to toll the statute of limitation. Based on these assumptions, the Eleventh Circuit poses the following question: Does a breach of the duty to disclose in a confidential relationship also support a breach-of-fiduciary-duty tort claim under Georgia law?

Our answer to this question starts with the law of confidential relationships. A confidential relationship may be created in two categories of circumstances. First, a confidential relationship is created "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another." OCGA § 23-2-58. Second, a confidential relationship may also be created "where, from a similar relationship of mutual confidence, the law

requires the utmost good faith." Id. In 2020, an amendment to OCGA § 23-2-58 clarified that this latter circumstance encompasses "fiduciary relationships," as was already established by Georgia law. See Ga. L. 2020, p. 377, § 2-26. See also *Forlaw v. Augusta Naval Stores Co.*, 124 Ga. 261, 274 (52 SE 898) (1905) (holding that the equitable rules governing confidential relationships apply "not only to persons standing in a direct fiduciary relation towards others, such as trustees, executors, attorneys, and agents, but also to those who occupy every position out of which a similar duty, in equity and good morals, ought to arise"). So, while all fiduciary relationships are confidential in nature, only some confidential relationships are fiduciary relationships.

A fiduciary's duties are established by Georgia law. See, e.g., OCGA § 14-8-21 (partner); OCGA § 14-11-305 (4) (member or manager of a limited liability company); OCGA § 29-4-22 (guardian); OCGA § 53-12-261 (trustee of an express trust). While the precise contours of a fiduciary's duty may vary depending on the type of fiduciary relationship and the particular facts of a situation, the

guiding principle is that the fiduciary has a duty to act with the utmost good faith. See *Jordan v. Moses*, 291 Ga. 39, 43 (727 SE2d 460) (2012) ("[O]ne partner has the duty to act with the utmost good faith toward another partner."); *Greenway v. Hamilton*, 280 Ga. 652, 653 (631 SE2d 689) (2006) ("The administrator is a trustee, and as such he must exercise the utmost good faith in his administration[.]"). Consequently, a failure to act with the utmost good faith constitutes a breach of fiduciary duty.

When, as is assumed here, a party to a confidential relationship has a duty to disclose and breaches that duty in a manner sufficient to toll the statute of limitation under OCGA § 9-3-96, such a breach could violate a fiduciary's duty of utmost good faith. As this Court has recently reiterated:

> To benefit from tolling under OCGA § 9-3-96, [a plaintiff] must first establish . . . actual fraud. Doing so requires a showing of either (1) actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence.

*Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 561 (870 SE2d

9

365) (2022) (cleaned up). Thus, to toll under OCGA § 9-3-96, a breach of the duty to disclose must be fraudulent, such as when a party conceals or suppresses a material fact while under a duty to disclose. See id. at 561-562. And a fiduciary concealing or suppressing a material fact while under a duty to disclose may well breach the duty of utmost good faith. See *Larkins v. Boyd*, 205 Ga. 69, 72 (52 SE2d 307) (1949) ("[I]n every instance the law requires that there be the utmost good faith between the principal and the agent. . . . Good faith by the agent in this case would have required a full communication of the facts relating to the sale of the property of the petitioners for taxes, and concealment of such facts per se amounted to actual fraud."). Thus, we answer the Eleventh Circuit's first question in the affirmative.

The Eleventh Circuit's second and third questions seek guidance about the scope of a fiduciary's duties under factual circumstances particular to this case. It appears to us that these fact-bound questions can be answered by reference to existing Georgia law, including this decision. So, we decline to answer the

10

second and third certified questions. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV; Georgia Supreme Court Rule 46.

3. *Conclusion*

Accepting as true the assumptions in the Eleventh Circuit's first question, we answer that question as follows: if the parties in a confidential relationship are also in a fiduciary relationship, a fraudulent breach of the duty to disclose would support a breach-of-fiduciary-duty tort claim under Georgia law. Because the second and third certified questions may be answered by existing Georgia law, we decline to answer them.

*Certified question answered. All the Justices concur, except Peterson, P. J., and Warren, J., who dissent in part.*

WARREN, Justice, dissenting in part.

I write in dissent because I would have respectfully declined to answer all of the questions certified to us by the Eleventh Circuit in this case.

Under this Court's Rule 46, certain federal courts may certify legal questions to this Court when it appears that there are proceedings before the federal court that involve "questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State." Georgia Supreme Court Rule 46.[1] See also Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV ("The Supreme Court shall have jurisdiction to answer any question of law from any state appellate or federal district or appellate court."). When a

---

[1] In full, Rule 46 says:

> When it shall appear to the Supreme Court of the United States, or to any District Court or Circuit Court of Appeals of the United States, or to any state appellate court, that there are involved in any proceeding before it questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such court may certify such questions or propositions of the laws of Georgia to this Court for instructions.

federal court certifies a question of law to this Court, it should not be merely a matter of pragmatism, efficiency, or convenience for the certifying court, but also an acknowledgement of the nature of our federalist system of government in which state courts of last resort are the ultimate decision-makers about matters of state law and federal courts are the ultimate decision-makers about matters of federal law. See *Sultenfuss v. Snow*, 35 F3d 1494, 1495, 1503-1504 (11th Cir. 1994) (Carnes, J., dissenting) (disagreeing with the en banc majority's failure to "certify a question to the Georgia Supreme Court [ ] unsettled questions of state law," given that the question presented in this case was "whether the current Georgia parole system, as embodied in the Georgia Constitution, the Georgia statutes, and the rules and guidelines promulgated pursuant to the statutes, creates a liberty interest in parole protected by the Due Process Clause of the Fourteenth Amendment" and explaining that "[o]nly a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law"). See also

*Pittman v. Cole*, 267 F3d 1269, 1272, 1289 (11th Cir. 2001) (vacating and remanding "to certify relevant unsettled questions of state law to the Alabama Supreme Court" and noting that certifying questions to state supreme courts can "save[ ] time, energy, and resources and helps build a cooperative judicial federalism") (punctuation and citation omitted). Implicit in a federal court's certification of a question to this Court should be a gesture of comity and mutual respect, and I am confident that such a gesture was the animating principle behind the Eleventh Circuit's certification order in this case.

As best I can tell, this Court traditionally has answered almost all of the certified questions that an eligible court has sent to us.[2] But there are limits on what this Court should expend its resources answering, and onto what types of questions this Court should give its imprimatur of finality. One express limitation is that we should not answer what appears to be a legal question if doing so would

---

[2] A Westlaw search from the last 50 years indicates that this Court has only twice declined to answer all of the questions certified to it by a federal court. By contrast, this Court answered one or more questions certified to it by federal courts at least 164 times.

14

require us to make fact-findings, either implicit or explicit. See, e.g., Rule 46 (allowing for the certification of questions regarding "questions or propositions of the *laws* of this State") (emphasis supplied); *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 576 (826 SE2d 116) (2019) (declining to answer a certified question from the Eleventh Circuit that required a "record-intensive evaluation" of what one of the parties had alleged and proved). Another is that we should not answer even pure questions of law if there exists "clear controlling precedents" that would apply to the questions presented. See Rule 46.

But we should apply an additional prudential limitation: generally speaking, we should not answer certified questions if they do not present *novel* questions under Georgia law. See, e.g., *Pittman*, 267 F3d at 1289 (recognizing the appropriateness of certifying to state supreme courts "[n]ovel, unsettled questions of state law"). Indeed, the absence of clear, controlling precedent directly on point based on the unique facts of a case does not mean that the case necessarily presents a novel legal issue.

15

The Eleventh Circuit's certified questions present that concern in this case. With respect to the first certified question, there may be no single Georgia case directly on point that would apply and control—but as is evident from the majority opinion, the legal answer the majority opinion provides is not a novel articulation of Georgia law. Indeed, the majority opinion applies a number of well-established principles of Georgia law to reach its conclusion. Likewise, this Court should not answer the second and third certified questions because they "can be answered by reference to existing Georgia law"—a conclusion the majority opinion also reaches. See Op. 11. Thus, with great respect for the Eleventh Circuit panel that certified the questions to us in this case, I would have declined to answer all three of the certified questions and therefore dissent from the majority opinion to the extent it answers the first.[3]

I am authorized to state that Presiding Justice Peterson joins

---

[3] To the extent the majority opinion's decision to decline answering the second and third certified questions is also based on those questions involving fact-bound inquires, see Op. at 11, I agree that is an appropriate reason to decline answering.

16

in this partial dissent.