**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0034, A25A0035. IN RE: ESTATE OF JOSEPH ELBERT CHEELEY, JR. (two cases).

GOBEIL, Judge.

These related appeals concern whether an executor owes a fiduciary duty to the creditor of an estate and whether a creditor has standing to sue the executor for breaching any such duty — issues that, remarkably, have not been squarely addressed by Georgia's appellate courts. The underlying probate action in this case involves the distribution of the estate of Joseph Elbert Cheeley, Jr. (the "Decedent"), who died on October 11, 2013. In the probate court, William Joseph Willis ("William") filed a petition for damages premised on the alleged breach of fiduciary duty by Joseph Elbert Cheeley III ("Joseph"), the executor of the Decedent's estate. After several years of litigation between these parties in multiple courts, the probate court dismissed

William's petition, finding that although Joseph as an executor owed a fiduciary duty to William as a creditor of the Decedent's estate, William lacked standing under OCGA § 53-7-54 because he was merely a creditor of the estate, rather than a beneficiary or heir. The court further dismissed William's claim for OCGA § 13-6-11 attorney fees. In his appeal in Case No. A25A0034, William asserts that the probate court's standing conclusion was erroneous. In his cross-appeal in Case No. A25A0035, Joseph asserts that, although William's petition was subject to dismissal, the probate court erred by finding that Joseph even owed a fiduciary duty to William. For the reasons set forth below, we affirm.

These parties have an extensive litigation history, but this opinion will attempt to explain only the details necessary to resolve the relatively discrete legal issues presented in these appeals. The Decedent and Dorothy Cheeley Willis ("Dorothy") were brother and sister. In 2001, the Decedent executed a Last Will and Testament (the "Will") giving all of his property to his five children, including Joseph, upon his death. The Will named Joseph and Dorothy as co-executors of his estate. Together, in October 2013, the co-executors initiated this probate proceeding to distribute the Decedent's estate, and the court granted them letters testamentary.

In 2017, the co-executors brought to the attention of the probate court disputes concerning Dorothy's asserted interest in two properties that were owned by the Decedent during his life. The first of these properties is located at 345 East Main Street in Buford, Georgia (the "Main Street property"), and Dorothy's purported life estate in this property was the subject of litigation in Gwinnett County Superior Court. The second property is located at 2135 Fleurie Lane in Braselton, Georgia (the "Fleurie Lane property"), and the Decedent's purported transfer of this property to Dorothy during his life was the subject of litigation in DeKalb County Superior Court. Both co-executors asserted various conflicts of interest against the other based on their competing interests in these properties, and they both sought to have the other removed as executor.

After Dorothy passed away on July 22, 2017, her son William was named as the executor of her estate, and his involvement in the probate action described below is based on his representation of Dorothy's estate. After Dorothy's death, Joseph was the only remaining executor of the Decedent's estate.

On January 22, 2018, on behalf of Dorothy's estate, William filed the underlying petition for damages against Joseph, asserting claims for breach of fiduciary

duty and recovery of litigation expenses. The petition alleged that Joseph owed "certain fiduciary duties to the [Decedent's] Estate's creditors, including [Dorothy and now her estate]." Specifically, the petition asserted that the duties owed to William, as a creditor of the Decedent's estate, were "the duty of fidelity and the duty to administer the estate for the benefit of both beneficiaries *and* creditors in accordance with Georgia law." As for Joseph's breach of those duties, the petition alleged that Joseph's actions regarding the two disputed properties were not taken in good faith and cost Dorothy's estate hundreds of thousands of dollars in litigation costs and additional expenses, much of which William anticipated would have to be paid by the Decedent's estate. The petition also sought to recover litigation expenses and attorney fees under OCGA § 13-6-11.

Because of the two pending actions in Gwinnett County and DeKalb County concerning the title to the two disputed properties, in September 2018, the probate court stayed all matters pending in the probate court until the superior court actions were resolved.

The superior court actions proceeded. In January 2018, the Superior Court of DeKalb County granted summary judgment to Dorothy, finding that she owned the

Fleurie Lane property via warranty deed given to her by the Decedent in 2012. Although the Decedent took a line of credit out in 2005 using the Fleurie Lane property as collateral, Dorothy's title to the property was intended to be unencumbered by the security deed, and thus it was the Decedent's estate that was required to pay the loan, and Dorothy was entitled to reimbursement for payments she made. The trial court also awarded Dorothy attorney fees under OCGA § 13-6-11. On appeal, we affirmed the trial court's judgment as to Dorothy's interest in the property and the award of damages to her for Joseph's breach of the warranty deed, but we reversed on the attorney fee award because a trial court may not grant summary judgment on such a claim. See *Cheeley v. Willis*, 359 Ga. App. XXVI (Case No. A20A1981) (March 16, 2021) (unpublished). At the conclusion of this case, the Decedent's estate owed Dorothy's estate more than $400,000.

In February 2018, the Superior Court of Gwinnett County entered judgment in Joseph's favor as to the Main Street property, finding that the life interest Dorothy purported was given to her by Decedent was never properly delivered. However, because Dorothy had already died by the time the question of her life estate interest was answered, there was no actual controversy between the parties, and we vacated

the trial court's judgment with instructions to dismiss the action as moot. *Willis v. Cheeley*, 363 Ga. App. 341, 342-345 (1) (870 SE2d 907) (2022).

After the superior court actions and appeals were concluded, activity resumed in the probate court. Joseph filed motions to dismiss or for summary judgment on William's breach of fiduciary duty claim. Ultimately, after at least two hearings, the probate court stated the "threshold issue" to be determined by Joseph's motions was "whether the personal representative, [Joseph], owes a fiduciary duty to the estate of [Dorothy] as a creditor of the estate. The parties agree the estate of [Dorothy] is a creditor of the instant estate of [the Decedent]." The probate court found that, yes, under OCGA § 53-7-1 (a), Dorothy's estate was a person interested in the estate to whom Joseph owed a fiduciary duty.

However, the probate court then determined that, under OCGA § 53-7-54, only a beneficiary or heir has a valid cause of action for a personal representative's breach of fiduciary duty, so William, via Dorothy's estate, did not have standing to bring this cause of action in his capacity as creditor. Accordingly, the probate court dismissed all of William's breach of fiduciary duty claims based on a lack of standing. And because William had no standing to bring the underlying claims, the court also

dismissed his claim for attorney fees and expenses under OCGA § 13-6-11. Both parties appealed.

1. We turn first to the parties' arguments concerning (a) whether the personal representative of an estate owes a fiduciary duty to an estate creditor and (b) if the creditor has standing to bring a cause of action for a breach of such a duty. These issues are closely related and concern much of the same body of law, so we consider them together.

On appeal, "when only a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." *Montgomery County v. Hamilton*, 337 Ga. App. 500, 503 (788 SE2d 89) (2016) (citation and punctuation omitted). See also *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016) (de novo review).

> Tasked with interpreting statutory language, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some

7

language mere surplusage. In summary, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

*Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 51-52 (1) (806 SE2d 215) (2017) (citations, punctuation, and footnotes omitted).

OCGA § 53-7-1 defines the duties and powers of an estate's personal representative. Under OCGA § 53-7-1 (a):

A personal representative is a fiduciary who, in addition to the specific duties imposed by law, is under a general duty to settle the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances. The personal representative shall use the authority and powers conferred by law, by the terms of any will under which the personal representative is acting, by any order of court in proceedings to which the personal representative is a party, and by the rules generally applicable to fiduciaries to act in the best interests of all persons who are interested in the estate and with due regard for their respective rights.

The Code also provides an express cause of action for breach of fiduciary duty against an estate representative to beneficiaries and heirs of an estate. OCGA § 53-7-54 (a).

(a) On appeal, William asserts that executors owe their fiduciary duties not only to beneficiaries, but also to creditors. In his cross-appeal, Joseph disagrees, arguing in pertinent part that estate representatives owe their fiduciary duties only to beneficiaries or heirs of the estate. The probate court found that William, as a creditor to the Decedent's estate, was a person "interested in the estate." Accordingly, the probate court found that the OCGA § 53-7-1 (a) recognizes a fiduciary relationship between William, as a creditor to the estate, and Joseph, as the estate's executor and personal representative. We agree with William and the probate court's decision.

The Code states that an executor is a fiduciary who must act in the best interests of all persons who are interested in the estate. OCGA § 53-7-1 (a). As this statute does not define "fiduciary," we may consider dictionary definitions to discern the text's plain and ordinary meaning. *Catoosa County v. Rome News Media*, 349 Ga. App. 123, 128 (825 SE2d 507) (2019). Black's Law Dictionary currently defines "fiduciary" as "[s]omeone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure." Black's Law Dictionary (12th ed.

2024). Notably, the edition of Black's Law Dictionary in effect at the time of the statute's passage (in 1996) tracks the same concepts in defining a "fiduciary":

> [a] person holding the character of a trustee, or a character analogous to that of a trustee, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires. A person having duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking

Black's Law Dictionary (6th ed. 1990).[1]

---

[1] This historical definition elaborates upon "fiduciary" in relevant portions as:

> A term to refer to a person having duties involving good faith, trust, special confidence, and candor towards another. A fiduciary includes such relationships as executor, administrator, trustee, and guardian. . . . A person or institution who manages money or property for another and who must exercise a standard of care in such management activity imposed by law or contract; e.g. executor of estate; receiver in bankruptcy; trustee. A trustee, for example, possesses a fiduciary responsibility to the beneficiaries of the trust to follow the terms of the trust and the requirements of applicable state law. A breach of fiduciary responsibility would make the trustee liable to the beneficiaries for any damage caused by such breach. . . .

Black's Law Dictionary (6th ed. 1990) (citation and punctuation omitted).

Bearing these definitions in mind, we recognize that while the Code does not explicitly define the contours of the duties owed by the personal representative, it does impose a "duty to settle the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances." Notably, it also clearly requires that the personal representative abide "by the rules generally applicable to fiduciaries to act in the best interests of all persons who are interested in the estate and with due regard for their respective rights." Id. In other words, the estate's personal representative is entrusted to carry out the wishes of the decedent and is explicitly required to act in other parties' best interests — duties we find to be "fiduciary" by the foregoing definitions. Thus, finding the language of this statute "plain and susceptible of only one natural and reasonable construction," *Monumedia II*, 343 Ga. App. at 51-52 (1) (citation and punctuation omitted), we construe it to impose a fiduciary duty on an estate's personal representative as to all persons interested in the estate.

Further, although this code section does not explicitly define who is a person interested in the estate (to whom these duties are owed), elsewhere in the Probate Code, creditors are included as "interested persons" for purposes of offering a will

11

for probate if the executor fails to do so. OCGA § 53-5-2. Further, we have held that because "[a]n executor holds an estate for the purpose of paying debts and distributing assets," estate creditors, like beneficiaries, "have a right to have the estate legally administered by the executor." See *In re Estate of Davis*, 243 Ga. App. 58, 61 (1) (532 SE2d 169) (2000) (citation and punctuation omitted) (affirming the removal of an executor for his actions that could disadvantage an estate creditor who was suing the estate; executor must maintain independence in the administration of the estate when there are conflicts between the interests of beneficiaries and creditors). Accordingly, we conclude that "it is generally recognized that an executor occupies a fiduciary relation toward all parties having an interest in the estate," including creditors. *Liner v. North*, 188 Ga. App. 677, 678 (2) (373 SE2d 846) (1988) (citation and punctuation omitted). See also *Leanhart v. Knox*, 351 Ga. App. 268, 270-271 (830 SE2d 545) (2019) (executor has a fiduciary obligation towards "those persons or entities with claims against the Estate").

Taken together, this body of law supports the probate court's conclusion that Joseph, as the personal representative of the Decedent's estate, owed a fiduciary duty to William, as a creditor of the Decedent's estate. That said, "the precise contours of

a fiduciary's duty may vary depending on the type of fiduciary relationship and the particular facts of a situation[.]" *King v. King*, 316 Ga. 354, 358 (2) (888 SE2d 166) (2023). And we are mindful that a fiduciary duty extends only so far as the scope of the fiduciary relationship between the personal representative and the particular "interested person" in any particular case. But here, where the interested party has alleged the "duty of fidelity" and the "duty to administer the estate for the benefit of both beneficiaries and creditors in accordance with Georgia law," we agree with William that such duties are established under the facts of this case.

Joseph's argument that an executor cannot occupy a fiduciary relationship simultaneously to both creditors and beneficiaries — because those parties may have conflicting interests — is unavailing. Indeed, the logical conclusion of this argument would also nullify an executor's fiduciary relationship to multiple beneficiaries, as there are often conflicts between those parties, yet the law allows an executor to manage this position so long as he or she acts impartially among beneficiaries according to law. *Bearden v. Longino*, 183 Ga. 819, 821 (1) (190 SE 12) (1937) ("the executor assumes an impartial role between the devisees or other parties at interest,

since he stands in the place of the deceased and seeks to carry out his wishes and intentions").

To illustrate, we note that the law explains how an executor should prioritize claims against an estate, and the executor's duty is to administer the estate according to law. See OCGA § 53-7-40. For instance, the executor is generally required to pay all debts before beneficiaries receive their share of the estate. See *Redfearn Wills & Administration in Georgia* § 12:8. So, an executor may fulfill his fiduciary duties to all persons interested in the estate by "settl[ing] the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances" just as the Code lays out. OCGA § 53-7-1 (a). See *Hasty v. Castleberry*, 293 Ga. 727, 735-736 (4) (749 SE2d 676) (2013) (where it is not "humanly impossible for [the fiduciary] to act fairly in the two capacities and on behalf of the two interests," he is not disqualified from serving as a fiduciary) (citation and punctuation omitted). We thus affirm the probate court's ruling that Joseph owed a fiduciary duty to William as a person interested in the Decedent's estate due to his status as a creditor of the Decedent's estate.

(b) Next, we consider whether William had standing to bring his petition for damages based on Joseph's purported breach of fiduciary duty to Dorothy's estate,

14

as a creditor of the Decedent's estate. William contends that if the executor owes Dorothy's estate a fiduciary duty, he has an action for breach of that duty under general tort law. Joseph counters that the Code specifically permits only heirs or beneficiaries to sue the personal representative for breach of fiduciary duty (in OCGA § 53-7-54), and allows other interested parties other forms of relief, such as an accounting or revoking of letters testamentary (in OCGA § 53-7-55), implying that the legislature intended to omit any non-beneficiary parties from the class of persons who could raise a direct claim for breach of fiduciary duty. Both parties argue that various rules of statutory construction support their respective interpretations of the statutes. On this issue, we agree with Joseph and the trial court.

As mentioned above, OCGA § 53-7-54 (a) states: "If a personal representative or temporary administrator commits a breach of fiduciary duty or threatens to commit a breach of fiduciary duty, a beneficiary of a testate estate or heir of an intestate estate shall have a cause of action . . . to recover damages" or for other relief. Notably, this statute provides the cause of action to recover damages for an executor's breach of fiduciary duty exclusively to beneficiaries or heirs of an estate. The Code also provides that "any person having an interest in the estate" may file a petition to revoke the

15

letters of a personal representative, and upon good cause shown, the court may revoke such letters or impose other sanctions. OCGA § 53-7-55.

Lacking an explicit path to his desired form of relief within the statutes governing the administration of estates, William argues that creditors may file an action for breach of fiduciary duty based on general principles of tort law. *Wachovia Bank of Ga., N.A. v. Namik*, 275 Ga. App. 229, 232 (620 SE2d 470) (2005) ("This Court has held unequivocally that an action for a breach of fiduciary duty lies in tort.") Specifically, Williams points to OCGA § 51-1-6, which provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Given our conclusion in Division 1 (a) that executors owe a fiduciary duty to creditors of an estate, this might suggest that creditors have a cause of action under OCGA § 51-1-6 to recover for the breach of such a duty. However, where, as here, the applicable Code has modified this principle of common law, we must follow the Code. See OCGA § 53-1-9 ("Except to the extent that the principles of common law and equity governing wills, trusts, and the administration of estates

are modified by this title or another provision of law, those principles remain the law of this state.").

William is attempting to proceed under an implied right of action via OCGA § 51-1-6, but we do not read that right of action so broadly as to apply to this context. Here, the General Assembly has clearly spoken. The statute reveals that the legislature understood and considered the universe of persons owed a duty by the executor or personal representative — and deliberately provided distinct remedies for each for any breach of such duties. For example, the Code differentiates the universe of such persons by category, as "beneficiaries" or "heirs" on one hand, and "interested" persons on the other, such as creditors. For beneficiaries or heirs, OCGA § 53-7-54 sets forth a broad cause of action for breach of such fiduciary duties, and noticeably does not mention the category of other interested persons. Immediately thereafter, OCGA § 54-7-55 (a), describes a separate path for the broader category ("any person having an interest in the estate") to pursue when addressing any perceived breaches of duty. We find this juxtaposition of clearly defined and distinct remedies compelling evidence that the legislature only intended heirs and beneficiaries to bring such a cause of action. This inference is bolstered by the well-established negative implication

17

canon, which includes the concepts of "expressio unius est exclusio alterius" (the expression of one thing implies the exclusion of another) and "expressum facit cessare tacitum" (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded). See *Namdar-Yeganeh v. Namdar-Yeganeh*, 369 Ga. App. 700, 704 (1) (894 SE2d 466) (2023). Additionally, for purposes of interpreting how to construe these statutes together, we assume that the specific statutes in the Code governing the administration of estates prevail over the general tort statute codifying a principle of common law absent any indication of a contrary legislative intent. *Fleureme v. City of Atlanta*, 371 Ga. App. 416, 420 (1) (900 SE2d 625) (2024).

While we found no Georgia cases directly on point, nor did we find any contrary to our holding, for whatever that may be worth. Our review revealed only two categories of pertinent cases in Georgia: actions by beneficiaries suing for breach of fiduciary duty, and actions by interested persons (which may include creditors) suing to remove the executor or pursue additional securities. See, e.g., *In re Estate of Zeigler*, 295 Ga. App. 156, 158-159 (2) (a) (671 SE2d 218) (2008) (beneficiary entitled to compensatory damages for executor's breach of fiduciary duty); *Bloodworth v.*

*Bloodworth*, 260 Ga. App. 466, 470-471 (1) (579 SE2d 858) (2003) (heirs entitled to bring action for executors' breach of fiduciary duty); *Ray v. Nat. Health Investors, Inc.*, 280 Ga. App. 44, 44 (633 SE2d 388) (2006) (creditor petitioned to remove executor based on a breach of fiduciary duty).[2]

Indeed, William has provided no examples of a creditor bringing a direct damages action against an executor for breach of fiduciary duty. The case upon which William primarily relies is *Ray*, 280 Ga. App. at 44, which he contends shows that "a creditor has standing to sue the executor for breach of fiduciary duty." Joseph asserts that William misrepresents the holding of *Ray*, and we agree. In *Ray*, the actual underlying pleading was a petition to remove the executor premised on breach of fiduciary duty filed by an estate creditor. Id. at 45. The probate court ultimately found that the executor had breached his fiduciary duty (although to whom was not defined) and ordered the executor to reimburse the estate, id. at 46, but nothing in *Ray* holds that estate creditors may bring a direct action for breach of fiduciary duty against an executor seeking monetary damages. Indeed, the creditor's standing to bring the

---

[2] Even the cases referenced in Division 1 (a) to find a duty to creditors all arose under this implied division of actions by the differing parties. See, e.g., *In re Estate of Davis*, 243 Ga. App. at 61 (1) (petition to remove executor filed by estate creditor); *Liner*, 188 Ga. App. at 678 (2) (breach of fiduciary duty action brought by estate heirs).

petition was not at issue in *Ray* because the creditor was proceeding under its clearly

defined authority pursuant to OCGA § 53-7-55 (a).

Finally, this is not a situation where the legislature imposed a duty without a

corresponding way to address a breach of that duty. Interested persons can pursue

specific remedies under OCGA § 53-7-55 (a)[3] and 18-2-70 et seq.[4] William is thus not

without remedy.

---

[3] More specifically, OCGA 53-7-55(a) provides:

Upon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions, the court shall cite the personal representative to answer to the charge. Upon investigation, the court may, in the court's discretion: (1) Revoke the personal representative's letters; (2) Require additional security; (3) Require the personal representative to appear and submit to a settlement of accounts following the procedure set forth in Article 6 of this chapter, regardless of whether the personal representative has first resigned or been removed and regardless of whether a successor fiduciary has been appointed; or (4) Issue such other order as in the court's judgment is appropriate under the circumstances of the case.

Notably, these options provide the court with broad discretion to fashion an appropriate remedy when breaches occur. *Fowler v. Cox*, 264 Ga. App. 880, 888 (1) (b) (592 SE2d 510) (2003) ("The discretionary powers of the probate court under OCGA § 53-7-55 are very broad and may be exercised whether the violation of law under consideration is a minor or major matter.") (citation and punctuation omitted).

[4] The Uniform Voidable Transactions Act provides an alternative avenue of relief for estate creditors.

Accordingly, given the Code as written, we agree with the trial court that, while Joseph owes a duty to William "to settle the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances," OCGA § 53-7-1 (a), William does not have standing to sue Joseph directly for a breach of this duty. Thus, the trial court did not err in dismissing William's petition in this case.

2. Based on our holding in Division 1, we also affirm the probate court's dismissal of William's OCGA § 13-6-11 attorney fee claim, as such claim was derivative of the breach of fiduciary duty claim that was dismissed. *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012).

In conclusion, we affirm the order of the probate court in both cases.

*Judgments affirmed in Case No. A25A0034 and A25A0035. Rickman, P. J., and Davis, J., concur.*